NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0092n.06

Case Nos. 21-1331/1378

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Mar 02, 2022 |
| | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| LARRY MARLOWE CHAMBERS, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |
| | ) | |

Before: SUTTON, Chief Judge; CLAY and McKEAGUE, Circuit Judges.

McKEAGUE, Circuit Judge. This is an appeal from the district court's denial of compassionate release and resentencing under the First Step Act for defendant Larry Marlowe Chambers, a leader of one of the largest drug operations in Detroit history. Because the court did not abuse its discretion in denying Chambers's petitions, we affirm.

**I**

**A. Chambers is convicted and sentenced.**

In the 1980s, Larry Marlowe Chambers and his brother ran an extensive and violent drug organization in Detroit. The organization employed hundreds of persons and operated over 200 houses for the sale of crack cocaine.

In October 1988, Chambers was convicted of (1) conspiracy to distribute controlled substances, (2) possession with intent to distribute in excess of 50 grams of cocaine base (crack

cocaine), (3) engaging in a continuing criminal enterprise ("CCE"), (4) using or carrying a firearm during a drug trafficking crime, and (5) income tax evasion.

The PSR specified that the drug conspiracy involved one kilogram of base cocaine and five kilograms of cocaine. Counts 1, 6, and 15 for conspiracy, crack-cocaine distribution, and CCE "involve[d] the same general type of offense, and the Guidelines for the offense are determined primarily on the basis of the quantity of substance involved," so they were grouped for sentencing. The resulting base offense level was 36. The PSR also described Chambers's role as "a supervisor and leader" in the conspiracy, resulting in a four-level increase to offense level 40. The PSR designated Chambers as a career offender based on his extensive criminal history including several instances of burglary, robbery, grand larceny, assault, escape from confinement, theft of government property, arson, and drug crimes. He was placed in criminal history category VI. His guidelines range was 360 months to life.

In March 1989, the district court sentenced Chambers to three concurrent terms of life imprisonment—one for conspiracy, one for distribution, and one for engaging in a continuing criminal enterprise—and an additional five years of supervised release. Chambers appealed, and a panel of the Sixth Circuit remanded for the district court to vacate either the conspiracy or the CCE conviction to avoid double jeopardy. On remand, the district court vacated the conspiracy conviction and resentenced Chambers to two life terms for distribution of crack cocaine and CCE, in addition to supervised release and a fine. The Sixth Circuit affirmed that sentence and denied Chambers's § 2255 motion.

In 2008, Chambers filed a motion for sentence reduction based on amendments to the crack-cocaine guidelines. That motion was denied, and the Sixth Circuit affirmed.

**B. Congress passes the Fair Sentencing and First Step Acts.**

In 2010, Congress passed the Fair Sentencing Act, which "reduced the 100-to-1 ratio" between crack- and powder-cocaine offenses "to about 18 to 1." *Terry v. United States*, 141 S. Ct. 1858, 1861 (2021); Fair Sentencing Act of 2010, Pub. L. 111-220, August 3, 2010, 124 Stat 2372. It did so "by increasing the amount of crack cocaine required to trigger those provisions' penalties." *United States v. Foreman*, 958 F.3d 506, 508 (6th Cir. 2020). The threshold increased "from 5 grams to 28 for the 5-year mandatory minimum and from 50 grams to 280 for the 10-year mandatory minimum." *Terry*, 141 S. Ct. at 1861; § 2(a), 124 Stat. 2372.

In 2018, Congress passed the First Step Act, which made the Fair Sentencing Act's provisions retroactive, enabling incarcerated persons to petition for resentencing and compassionate release. First Step Act of 2018, Pub. L. 115-391, Dec. 21, 2018, 132 Stat 5194.

**C. Chambers seeks compassionate release and First Step Act sentence reduction.**

In May 2019, Chambers filed a pro se motion for sentence reduction under § 404 of the First Step Act. Chambers filed a separate pro se motion for compassionate release in April 2020. The compassionate release motion was denied without prejudice for failure to exhaust administrative remedies, but the court did not yet rule on the motion for sentence reduction. On January 7, 2020, Chambers was appointed counsel. On January 8, 2021, the district court issued an opinion and order on the First Step Act motion stating that Chambers was eligible for sentence reduction on his crack-cocaine conviction, but ineligible on his CCE conviction. Chambers's attorney then filed a motion to reconsider the ineligibility of his CCE conviction under the First Step Act and a renewed motion for compassionate release.

On February 23, 2021, the court denied both motions. In doing so, the court declined to revisit its ruling on the ineligibility of the CCE conviction under the First Step Act, but stated that

even if Chambers was eligible, the court would deny reduction based on its weighing of the same § 3553(a) factors it analyzed in denying compassionate release. The parties agreed that no further briefing on the § 3553(a) factors was necessary for the court to decide the First Step Act motion regarding the crack-cocaine conviction. On April 15, 2021, the court granted Chambers's motion for sentence reduction on his crack-cocaine conviction, reducing his sentence on that count from life to 405 months—the top of the amended guideline range. In doing so, the court weighed the § 3553(a) factors and determined that "an upward variance . . . is no longer warranted." R. 1649, P. 1854. Chambers appealed.

## II

The First Step Act permits a court to consider reducing a defendant's sentence for a "covered offense." § 404(b), 132 Stat 5194. A "covered offense" is defined as: "[A] violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010." § 404(a), 132 Stat 5194. Chambers argues on appeal that his CCE conviction is a covered offense. He also argues that, even if his CCE conviction is not a covered offense, he is still eligible for resentencing on that conviction because it was grouped with his crack-cocaine conviction, which is a covered offense, for sentencing. *See United States v. Hudson*, 967 F.3d 605, 611 (7th Cir. 2020). This Court has not answered these eligibility questions. But we need not and do not decide them here because the district court clearly expressed that it would deny Chambers a reduced sentence on his CCE conviction even if he was eligible. And in doing so, the court did

not abuse its discretion. So, even if Chambers was eligible, we would affirm the district court's decision to deny resentencing.

"We review the district court's decision to deny an eligible defendant's First Step Act motion for abuse of discretion." *United States v. Ware*, 964 F.3d 482, 487 (6th Cir. 2020). A district court is authorized—but not required—to reduce an eligible defendant's sentence under the First Step Act. *Foreman*, 958 F.3d at 510. In deciding whether to grant a sentence reduction under the First Step Act, the district court "is required to consider the sentencing factors under 18 U.S.C. § 3553(a)." *Ware*, 964 F.3d at 487. On such motions, the district court has significant discretion. *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020).

In the district court's order denying Chambers compassionate release and denying reconsideration of his motion for resentencing on his CCE conviction, the court reasoned that, even if he was eligible for resentencing, the court "would decline to exercise such discretion in this particular case, based upon Chambers's record and a consideration of the § 3553(a) factors[.]" R. 1642, P. 1827. The court then thoroughly analyzed the § 3553(a) factors. The court considered Chambers's status as a leader in a large-scale drug organization, violent conduct, extensive and violent criminal history, lack of employment while not in prison, and risk of recidivism. The court weighed these factors against Chambers's rehabilitation efforts, educational achievements while in prison, and significant time spent in prison without discipline. The court concluded that the weight of the factors did not warrant a reduced sentence. The court sufficiently explained its reasoning for denying reduction, and in doing so did not rely on erroneous facts, misapply the law,

or use the wrong legal standard. *United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021). So, the court did not abuse its discretion.

## III

Chambers also appeals the district court's denial of compassionate release, which involved the same weighing of the §3553(a) factors discussed above. He argues that the district court abused its discretion when it denied compassionate release based on the § 3553(a) factors, but then two months later weighed those same § 3553(a) factors and granted Chambers a reduced sentence for crack-cocaine distribution. We disagree.[1]

Section 404(b) of the First Step Act permits a court to reduce a defendant's sentence for a covered offense. In doing so, the court "has discretion to consider all relevant factors." *Boulding*, 960 F.3d at 784. But "at a minimum" this analysis must "include[] an accurate calculation of the amended guidelines range at the time of resentencing and thorough renewed consideration of the § 3553(a) factors." *Id.* The First Step Act also grants district courts the authority to grant compassionate release when: (1) "extraordinary and compelling reasons warrant" a sentence reduction; (2) "such a reduction is consistent with applicable policy statements"; and (3) reduction is warranted upon consideration of "applicable § 3553(a) factors." *United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020). Even if all three conditions are met, a district court still has discretion to deny release because "the compassionate release decision is discretionary, not mandatory." *Id.* at 1106.

---

[1] In its order denying compassionate release, the district court weighed the § 3553(a) factors, concluding its analysis by stating that, "Defendant Chambers is not an appropriate candidate for the extraordinary remedy of compassionate release." R. 1642, P. 1832. On appeal, Chambers argues that this final statement adds a separate, additional element to the inquiry. But that is a mischaracterization. The statement is easily recognized as a summary sentence of the court's conclusion, not further analysis of a separate and additional factor.

Decisions under both provisions are reviewed for an abuse of discretion. *Ware*, 964 F.3d at 487; *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020). For both, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances[.]" *United States v. Smith*, 958 F.3d 494, 500 (6th Cir. 2020) (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018)). However, a court "must provide a reasoned explanation . . . sufficiently thorough to permit meaningful appellate review." *Ware*, 964 F.3d at 487.

In its decision denying compassionate release, the district court concluded that "Chambers's age and health, in light of the pandemic . . . constitute extraordinary and compelling circumstances." R. 1642, P. 1830. Then, as discussed above, the court thoroughly considered the § 3553(a) factors. The court determined that on balance, "[t]he nature and circumstances of [Chambers's] offenses *weigh strongly* against his release" and that releasing Chambers would not "promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public." *Id.* at 1831–32. Approximately two months later the district court undertook a "renewed consideration" of the § 3553(a) factors for Chambers's motion under the First Step Act for a reduction on his crack-cocaine conviction, concluding that his life sentence for that count should be reduced to 405 months on the basis that "an upward variance . . . is no longer warranted." R. 1649, P. 1846, 1854.

In its order denying compassionate release, the court properly applied the law and engaged in a thorough analysis of the § 3553(a) factors. The decision is well-reasoned and operates within

the court's discretion to grant or deny a reduced sentence based on its weighing of the pertinent factors. *See United States v. Flowers*, 963 F.3d 492, 498 (6th Cir. 2020).

The court's later decision to reduce Chambers's sentence solely on his crack-cocaine conviction does not render the earlier decision to deny compassionate release an abuse of discretion. The context of both motions is key.

On Chambers's compassionate release motion, he requested that his sentence be reduced to time served; in other words, he requested immediate release. In contrast, two months later he sought and was granted a reduced sentence from life to 405 months on his crack-cocaine conviction, but not immediate release. That decision functionally provided no relief to Chambers because he remains incarcerated for life on his CCE conviction. And although a district court's options are not a binary choice between immediate release and retaining the original sentence, *Jones*, 980 F.3d at 1103 n.7, granting Chambers a reduced sentence on his compassionate release motion rather than immediate release would have made little sense when the primary basis for the district court's finding of extraordinary and compelling reasons warranting compassionate release was the risk COVID-19 posed to Chambers while incarcerated.

Further, Chambers's compassionate release motion required the district court to consider the nature and circumstances of all Chambers's crimes: his CCE conviction—the more serious offense here—in addition to his crack-cocaine conviction. In contrast, in analyzing Chambers's later motion for a reduced sentence on his crack-cocaine conviction, the court focused solely on the nature and circumstances of *that* offense. That opinion does not reference Chambers's CCE conviction nor the leadership, scope, or extent of the drug organization. When denying compassionate release and a sentence reduction on his CCE conviction two months earlier, however, the district court referenced the extensive harm caused by Chambers's drug organization.

Given these distinctions, the district court's differing decisions as to different crimes are not contradictory. *Cf. United States v. Christman*, 607 F.3d 1110, 1122–23 (6th Cir. 2010) (holding that a district court's unexplained and "drastically changed" rationale upon resentencing for the same crime was inconsistent and therefore unreasonable).

The dissent argues that our reasons that the two decisions are consistent are "purely speculative." But the difference in the underlying conduct considered on each motion (CCE versus distribution of crack-cocaine) and the difference in the relief requested (immediate release versus a reduction to 405 months) are sufficiently obvious. The court need not explicate that which can be easily deduced. *See, e.g.*, *Chavez-Meza*, 138 S. Ct. at 1967–68 (holding that the sentencing judge's explanation was sufficient given his "consideration of the relevant sentencing factors, and the intuitive reason why he picked a sentence above the very bottom of the new range").

Fundamentally, neither the district court's denial of compassionate release nor its later reduction of Chambers's sentence for crack-cocaine distribution was an abuse of discretion because neither decision relied on erroneous facts, misapplied the law, or used the wrong legal standard. *See Elias*, 984 F.3d at 520.

## IV

For these reasons, we affirm the judgment of the district court.

CLAY, Circuit Judge, dissenting. Beginning in 1988, federal authorities targeted Defendant Larry Chambers' crack-cocaine manufacturing and distribution organization in a take-down operation. Among other things, Chambers was charged with and convicted of possession with intent to distribute more than 50 grams of crack cocaine (the "distribution" conviction), 18 U.S.C. § 841(a)(1), and engaging in a continuing criminal enterprise (the "CCE" conviction), 21 U.S.C. § 848(a), (c). He received a life sentence on both convictions.

In August 2010, Congress passed the Fair Sentencing Act, which altered the statutory penalties for convictions under § 841(a)(1) "from 5 grams to 28 for the 5-year mandatory minimum and from 50 grams to 280 for the 10-year mandatory minimum." *Terry v. United States*, 141 S. Ct. 1858, 1861 (2021); § 2(a), 124 Stat. 2372. Then, in 2018, Congress passed the First Step Act, which made the Fair Sentencing Act's provisions retroactive. First Step Act of 2018, Pub. L. 115-391, Dec. 21, 2018, 132 Stat 5194.

On May 14, 2019, Chambers filed a pro se motion for resentencing on both charges pursuant to the First Step Act. In April 2020, while his motion for resentencing was still pending, Chambers filed a motion seeking compassionate release for reasons related to the pandemic. On January 8, 2021, the district court considered his motion for resentencing and determined that Chambers' CCE conviction was not a "covered offense" under § 404(a) of the First Step Act; and therefore, his CCE conviction was ineligible for resentencing. Although Chambers' distribution conviction was eligible to be resentenced, the district court did not resentence Chambers at that time. A few days later, Chambers filed a motion to reconsider the order denying resentencing on his CCE conviction.

In a combined order, the district court addressed Chambers' motion for reconsideration and his compassionate release motion. First, addressing his motion for reconsideration, the district

court declined to revisit the issue, and stated that even if Chambers' CCE conviction were eligible for resentencing under the First Step Act, "the Court would decline to exercise such discretion in this particular case, based upon Chambers's record *and a consideration of the § 3553(a) factors, discussed below*." (Order & Op., R. 1642, Page ID # 1827 (emphasis added).) The district court then shifted to analyzing whether Chambers was entitled to compassionate release. It first determined Chambers' case presented "extraordinary and compelling circumstances" warranting release. (*Id*., Page ID # 1830.) The court then considered the 18 U.S.C. § 3553(a) factors and concluded that they weighed against his immediate release. Consequently, Chambers was denied compassionate release on both convictions.

Less than two months later, the district court resentenced Chambers' distribution conviction pursuant to the First Step Act. The district court again considered the § 3553(a) factors, but this time it determined they weighed in favor of a sentence reduction. The court reduced Chambers' sentence for the distribution conviction from life imprisonment to 405 months. Chambers timely appealed both the denial of his compassionate release and the denial of his motion for resentencing under the First Step Act on his CCE conviction.

The majority now affirms the district court's refusal to resentence Chambers' CCE conviction because, in isolation, "neither decision relied on erroneous facts, misapplied the law, or used the wrong legal standard." Majority Op. at 9. However, as explained below, the district court misapplied the law when it held Chambers' CCE conviction was ineligible for resentencing. At the very least, the district court's failure to the provide any explanation for its inconsistent application of the § 3553(a) factors less than two months apart warrants remanding the case to allow the district court to explain its sentencing decisions.

- 11 -

It is settled law that defendants eligible for resentencing on a covered offense under the First Step Act[1] are not entitled to a plenary resentencing. *United States v. Smith*, 958 F.3d 494, 498–99 (6th Cir. 2020). However, the more discrete issue presented in this case "is whether a defendant is eligible for resentencing on a non-covered offense because it was 'grouped' together with a covered offense to determine the guidelines range, as was done here." (Appellee's Br. 15.) This is an issue of first impression in this Circuit.

In *United States v. Hudson*, 967 F.3d 605 (7th Cir. 2020), the Seventh Circuit addressed the exact issue raised in this appeal. In that case, the defendant was convicted of (1) possession with intent to distribute more than 5 grams of crack cocaine, (2) possession with intent to distribute less than 5 grams of crack cocaine, and (3) being a felon in possession of a firearm. *Id*. at 607. These offenses were grouped for sentencing and the defendant was sentenced to 40 years on the first crack offense, 30 years on the second, and 40 years for the firearm offense, all to run concurrently. *Id*. at 607–08. Hudson moved for resentencing under the First Step Act on all counts, but the district court held Hudson's firearms conviction was not eligible for resentencing. *Id*. at 608. The district court then resentenced Hudson's possession with intent to distribute charges

---

[1] Section 404 of the First Step Act provides:

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . , that was committed before August 3, 2010.

. . .

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act § 404.

and imposed a reduced sentence of 262 months' imprisonment, but with the 40-year sentence remaining on his firearm conviction, the reduction functionally provided no relief. *Id.*

The Seventh Circuit reversed the district court's sentencing order. It held that Hudson's firearms conviction was eligible for resentencing "because that offense was grouped with Hudson's covered offenses for sentencing, and the resulting aggregate sentence included Hudson's sentences for both the firearm and covered offenses." *Id.* at 610. Because the plain language of § 404 of the First Step Act is silent as to whether non-covered offenses are eligible for sentence reduction when they have been grouped with covered offenses for sentencing, the Seventh Circuit reasoned that excluding non-covered offenses from eligibility "would, in effect, impose an extra-textual limitation on the Act's applicability." *Id.*; *see* First Step Act § 404(c) (identifying specific limitations on the applicability of the First Step Act).

Since *Hudson*, other circuits have indicated a willingness to follow suit. *See, e.g., United States v. Reed*, 7 F.4th 105, 110 (2d Cir. 2021); *United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020); *United States v. Winters*, 986 F.3d 942, 949 (5th Cir. 2021); *United States v. Spencer*, 998 F.3d 843, 846-47 (8th Cir. 2021); *and United States v. Taylor*, 982 F.3d 1295, 1300 (11th Cir. 2020). And this trend makes sense; "[s]entences for covered offenses are not imposed in a vacuum, hermetically sealed off from sentences imposed for non-covered offenses." *United States v. Mitchell*, 832 F. App'x 387, 390 (6th Cir. 2020) (Stranch, J., concurring) (quoting *Hudson*, 967 F.3d at 611); *accord United States v. Smith*, Nos. 20-1833 / 21-1218 (6th Cir. Jan. 13, 2022) (order) ("Because Smith's sentence for the non-covered CCE offense was grouped with his two covered sentences . . . remand is appropriate for the district court to consider in the first instance whether Smith is eligible for (and, if so, should receive) relief.").

Further undermining the majority's claim that no misapplication of the law has occurred, during the pendency of Chambers' current appeal, the government conceded in a different case that district courts have the authority under the First Step Act to reduce a defendant's sentence for CCE convictions if they were previously grouped with a covered offense. Gov. Mot. for Remand at 2, *United States v. Smith*, Nos. 20-1833 / 21-1218 (6th Cir. Jan. 13, 2022) (order) ("The United States now concedes that the district court has the authority under the First Step Act to reduce Smith's sentence on his CCE conviction, even though it is not 'a covered offense,' if the district court concludes . . . they form a sentencing package."). Addressing its concession in *Smith*, the government does not deny that the district court misapplied the law. Instead, the government argues that the district court's alternative holding that it would decline to resentence Chambers' CCE conviction is sufficient to distinguish Chambers' appeal from *Smith*. However, as explained below, the district court's inconsistent application of the § 3553(a) factors undermines the persuasiveness of its alternative holding.

In its order denying Chambers' motion for compassionate release, the district court found the § 3553(a) factors weighed against a reduced sentence. But less than two months later, the district court found the § 3553(a) factors weighed in favor of reducing the sentence for Chambers' distribution conviction. The majority's analysis glosses over the fact that the application of the § 3553(a) factors is inconsistent. In passing, the majority seems to accept the district court's inconsistent application of the § 3553(a) factors because (1) having already affirmed Chambers' life sentence on his CCE conviction, reducing his sentence on the distribution conviction "functionally provided no relief;" and (2) CCE is a more serious offense than Chambers' distribution conviction. Majority Op. at 8. The main problem with these justifications is that they

are purely speculative. The district court never provided any explanation for the disparate application of the § 3553(a) factors.

When this Court is dissatisfied with the explanation provided by a district court, it may "'send the case back to the district court for a more complete explanation.'" *United States v. Jones*, 980 F.3d 1098, 1114 (6th Cir. 2020) (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018)); *accord United States v. Smith*, 896 F.3d 466, 474 (D.C. Cir. 2018) ("Under Section 3553(a)'s individualized-decisionmaking rubric, reversals of course or seemingly contradictory findings should not go unexplained."). When we have the authority to obtain an explanation from the district court, we should do so rather than speculate as to why the district court did what it did.

Finally, the majority draws a distinction between the relief Chambers sought in his motion for compassionate release and in his motion for resentencing. However, drawing such a distinction strongly cuts in favor of remanding the case for an explanation. Based on the limited information the district court provided, it is clear that the court thought the § 3553(a) factors weighed against Chambers' immediate release. The district court also concluded that the § 3553(a) factors could support a term of imprisonment of less than a life sentence. But when the district court held that it would refuse to reduce Chambers' CCE sentence based on the consideration of the § 3553(a) factors in its compassionate release analysis, it conflated Chambers' motion for resentencing, which merely asked the court to consider whether the § 3553(a) factors weighed in favor of a shorter sentence, with his motion for compassionate release, which asked the court to consider whether the § 3553(a) factors weighed in favor of his immediate release. There remains a distinct possibility that if the district court had properly considered the § 3553(a) factors in relation to the relief Chambers actually sought in his motion for resentencing (i.e., simply a shorter sentence), the court would have found his CCE conviction warranted a sentence of imprisonment less than life.

At the very least, allowing the district court to supplement the record with a proper explanation could clear up any confusion or, alternatively, reveal that the sentences were not well-considered. Instead, in its rush to affirm the district court, the majority engages in needless speculation as to why the district court reached opposite conclusions with respect to the two sentences when faced with considering the same § 3553(a) factors.

In conclusion, the district court misapplied the law when it held Chambers' CCE conviction was not eligible for resentencing under the First Step Act. Because this misapplication of the law was an abuse of discretion, it would normally be appropriate to reverse the district court's order denying Chambers' motion for reconsideration and remand the case for resentencing. However, before doing so, the best course of action at this time would be to have the district court explain its inconsistent application of the § 3553(a) factors. If the district court provides a sufficient explanation, the alternative holding that denied Chambers' motion for reconsideration might resolve this case. But of course, the district court's explanation for its inconsistent application of the factors could be insufficient. In that event, the case could be remanded with instructions that Chambers' CCE conviction is eligible for resentencing. In short, determining whether a reversible abuse of discretion occurred should be based on the district court's explanation of its conduct, not the majority's speculation.

Accordingly, this case should be remanded for the limited purpose of allowing the district court to explain its inconsistent application of the § 3553(a) factors. If the explanation fails to pass muster, resentencing may ultimately prove to be the best option.